Filed 7/8/16  Tyler v. Wells Fargo Bank CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| STEVEN GREEN TYLER, | |
| Plaintiff and Respondent, | E063985 |
| v. | (Super.Ct.No. CIVDS1402881) |
| WELLS FARGO BANK, N.A., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Bryan Foster, Judge.  Affirmed.

Wright, Finlay & Zak, T. Robert Finlay, Nicholas G. Hood and Kathryn A. Moorer for Defendant and Appellant.

Wesierski & Zurek, David M. Ferrante and Lynne Rasmussen for Plaintiff and Respondent.

1

# I

# INTRODUCTION

Defendant Wells Fargo Bank, N.A. (Wells Fargo), as trustee for First Franklin Mortgage Loan Trust Series 2004-FFH2 Asset Backed Certificates 2004-FFH2 (Asset Backed Certificates Trust), appeals an order denying Wells Fargo's motion for an award of attorney fees. Wells Fargo filed the motion after Wells Fargo was dismissed from a wrongful foreclosure action brought by Steven Green Tyler (Tyler) against Wells Fargo and other defendants.[1]

Wells Fargo contends that under Civil Code sections 1021 and 1717, Wells Fargo is entitled to recover reasonable attorney fees as the prevailing party under a deed of trust on Tyler's property (Senior TD). Wells Fargo argues the trial court erred in ruling that the Senior TD did not authorize Wells Fargo to recover attorney fees incurred in protecting Wells Fargo's interests under the Senior TD. Wells Fargo asserts that, even though the Senior TD was paid off and extinguished prior to the lawsuit, Wells Fargo could nevertheless recover its attorney fees under the Senior TD. Wells Fargo argues it is entitled to recover its attorney fees under Civil Code section 1717, because Tyler's action involved claims predicated upon a contract, the Senior TD.

---

[1] First Entertainment Credit Union; First Franklin Financial Corporation; Ocwen Loan Servicing, LLC; Western Progressive, LLC; and, Asset Backed Certificates Trust.

We conclude the trial court properly denied Wells Fargo's motion for attorney fees because the attorney fees provision in the Senior TD states that any attorney fees recoverable under the Senior TD "shall become additional debt of Borrower secured by this Security Instrument." Wells Fargo was therefore limited to recovering its attorney fees against Tyler by adding such fees to the Senior TD as debt, before the Senior TD was extinguished. The judgment is therefore affirmed.

II

FACTS AND PROCEDURAL BACKGROUND

In 2004, Tyler borrowed $225,000 to purchase property in Lake Arrowhead (the property). The loan was secured by the property pursuant to the Senior TD, executed by Tyler and recorded on February 27, 2004. First Franklin Financial Corp. was the originating lender. On March 2, 2004, all rights, title and interest in the Senior TD were transferred to Wells Fargo by execution of a recorded Corporate Assignment of Deed of Trust.

Ocwen Loan Servicing, LLC (Ocwen) was the attorney in fact for Wells Fargo and the loan servicer for the loan secured by the Senior TD. Ocwen held a power of attorney for the Senior TD, allowing Ocwen to represent Wells Fargo's interests in litigation and enforce the Senior TD.

In 2007, Tyler obtained a second loan secured by the property in the amount of $145,000, from First Entertainment Credit Union (FECU). Tyler was the trustor, and FECU was the lender and beneficiary under the deed of trust (Junior TD).

3

When Tyler began having difficulty making the payments on the property loans, Tyler attempted to modify the loans. He was told the defendants would work with him in structuring an alternative to foreclosure on his property and that he qualified for a mortgage modification. Nevertheless, defendants failed to assist Tyler with modifying the loans and sold the property on November 13, 2013.

In December 2014, Ocwen notified Tyler by email that the senior loan had been paid off. The next day, Tyler received a letter from FECU requesting Tyler to contact FECU. Upon doing so, Tyler learned for the first time that the property had been sold. In January 2014, the locks were changed on the property without Tyler's consent and he was charged for default-related services.

*Wrongful Foreclosure Complaint*

In March 2014, Tyler filed a wrongful foreclosure complaint against the FECU, Ocwen, and the Asset Backed Certificates Trust, alleging breach of contract and seeking to set aside the foreclosure, retain the payoff funds paid to Wells Fargo, and to rescind the note and Senior TD. The breach of contract cause of action in the original complaint alleged that the defendants, including Ocwen, the Asset Backed Certificates Trust, and FECU promised to provide Tyler with a loan modification because he had been approved. Tyler accepted the offer by performing as instructed and making four payments of the modified amount as instructed. Defendants allegedly breached the terms of the contract by returning Tyler's fourth payment, by not granting the promised permanent loan modification, and by selling Tyler's home without providing him with notice of the sale.

4

In April 2014, Ocwen, as servicer of the senior loan, appointed Wells Fargo as successor trustee of the Asset Backed Certificates Trust, in place of First Franklin Financial Corp. Asset Backed Certificates Trust was removed as a defendant and Wells Fargo was added. Tyler filed a first amended complaint (FAC), which eliminated Asset Backed Certificates Trust from the breach of contract cause of action. Ocwen and Wells Fargo demurred to the FAC, which the trial court sustained with leave to amend.

Tyler filed a second amended complaint (SAC). The Asset Backed Certificates Trust was added back as a defendant. The SAC included the following causes of action alleged against the Asset Backed Certificates Trust: (1) quiet title, (2) fraudulent conveyance, (3) negligence, (4) breach of implied covenant of good faith and fair dealing, (5) violation of Business and Professions Code section 17200, (6) wrongful foreclosure/rescission, (7) cancellation of instruments/rescission, and (8) declaratory relief. Wells Fargo was not mentioned in the SAC but was added again as a defendant in place of the defendant Asset Backed Certificates Trust, which was removed as a named defendant. There was no breach of contract claim remaining against Wells Fargo or Asset Backed Certificates Trust.

In October 2014, Wells Fargo, as trustee for the Asset Backed Certificates Trust, and Ocwen demurred to the SAC. Wells Fargo and Ocwen argued foreclosure was on the junior loan, not the senior loan, which was paid off before foreclosure on the Junior TD. Therefore Wells Fargo and Ocwen were not liable in any way because they were not involved in foreclosing on Tyler's property. In December 2014, Tyler voluntarily

5

dismissed two of the causes of action, and the trial court sustained Wells Fargo's demurrer to the remainder of the SAC without leave to amend. The trial court entered an order of dismissal with prejudice as to Wells Fargo, as trustee for the Asset Backed Certificates Trust.

*Motion for Attorney Fees*

As a prevailing party, Wells Fargo filed a memorandum of costs and amended memorandum of costs. Wells Fargo also filed a motion for attorney fees under Civil Code section 1717 and the Senior TD attorney fees provision.

During oral argument on Wells Fargo's motion for attorney fees, Tyler's attorney argued Wells Fargo was not entitled to attorney fees on the following three grounds: (1) Wells Fargo was not a beneficiary of the Senior TD; (2) the Senior TD does not contain a provision allowing for recovery of attorney fees after the trust has been extinguished; and (3) Wells Fargo was not entitled to attorney fees under Civil Code section 1717, because the contract cause of action was voluntarily dismissed, Wells Fargo was voluntarily dismissed, and the complaint was not thereafter amended to add Wells Fargo.

Counsel representing Ocwen and Wells Fargo, Kathryn Moore, argued that Wells Fargo, not Ocwen, was a beneficiary of the Senior TD, as reflected in the recorded assignment, and Tyler conceded this in his opposition. Ocwen was only the servicer of the loan secured by the Senior TD. In addition, Moore asserted that the Senior TD contained an attorney fees provision that was broad enough to provide for recovery of attorney fees. The fee provision allowed Wells Fargo to recover attorney fees in any

6

legal proceeding that might significantly affect Wells Fargo's rights and the security interest. Moore argued that case law holds that a lender can recover its attorney fees in a post-foreclosure action after the loan ceases to exist. Wells Fargo, as beneficiary under the Senior TD, therefore had a right to protect its rights under the Senior TD and recover its attorney fees in doing so.

As to recovery of attorney fees under Civil Code section 1717, Moore argued the first and second amended complaints contained breach of contract claims against Wells Fargo. Furthermore, the Senior TD attorney fees provision permitted Wells Fargo to recover attorney fees not only for breach of contract but also based on the noncontract claims, as long as the claims challenged Wells Fargo's rights.

Tyler's attorney responded that Wells Fargo failed to mention that the Senior TD contains language stating that, when Wells Fargo is required to protect its interest as the note lender, "Any amounts disbursed by a lender under this Section 9 shall become additional debt of borrower secured by this security instrument." Under this provision, Wells Fargo would get reimbursed for its litigation expenses through the debt under the note. But in the instant case, the debt was already extinguished when the junior note holder paid off the senior note. The Senior TD and note were therefore extinguished, which meant thereafter Wells Fargo could not recover its attorney fees for subsequent litigation. Tyler added that Wells Fargo could not recover its attorney fees under Civil Code section 1717 because Wells Fargo was voluntarily dismissed from the complaint.

After taking the matter under submission, the court denied Wells Fargo's motion for attorney fees on the ground section 9 of the Senior TD did not provide "a contractual remedy for the recovery of attorney fees as [] costs associated with litigating a contractual dispute." The trial court explained in its minute order: "The contractual provision here is not contemplating that incurred attorney fees are [] recoverable costs by the prevailing party under a contractual dispute. Code of Civ. Proc. [§] 1033.5(a)(10) allows attorney fees to be recovered as [] costs when allowed by a contractual provision. Section 9 provides no remedy for Wells Fargo (the beneficiary) to collect the costs of incurred attorney fees related to securing and protecting its rights and interests. It only provides the beneficiary/lender can incur attorney fees to protect its interest and rights. Again, section 9 is not providing the lender/beneficiary with a basis to [recover] attorney fees as a litigation cost. Therefore, no contractual provision exists providing for the recovery of attorney fee[s]."

III

STANDARD OF REVIEW

In determining whether Wells Fargo is entitled to attorney fees, we examine the applicable statutes and the attorney fees provision in the Senior TD. Extrinsic evidence has not been offered to interpret the attorney fees clause of this contract and the facts are not in dispute. We therefore review the trial court's decision de novo. (*Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698, 705; accord, *Blackburn v.*

8

*Charnley* (2004) 117 Cal.App.4th 758, 767 ["On appeal, we review the determination of the legal basis for an award of attorney fees de novo as a question of law."].)

IV

LAW APPLICABLE TO RECOVERY OF ATTORNEY FEES

Under the American Rule, each party ordinarily must pay its own attorney fees unless a contract or a statute provides otherwise. (*Cargill, Inc. v. Souza* (2011) 201 Cal.App.4th 962, 966 (*Cargill*).) Attorney fees are allowable as costs under Code of Civil Procedure section 1032, "when authorized by any of the following: [¶] (A) Contract. [¶] (B) Statute. [¶] (C) Law." (Code Civ. Proc., § 1033.5, subd. (a)(10).) Where a contract specifically provides for an award of attorney fees, Civil Code section 1717 allows recovery of attorney fees by the prevailing party, regardless of whether the contract specifies that party. (*Cargill,* at p. 966.)

In order to recover attorney fees under Civil Code section 1717, (1) a contract must authorize such fees, (2) the party seeking attorney fees must be the prevailing party, and (3) the fees incurred must be reasonable. (*Johnston v. Lindauer* (E.D. Cal. 2010) 2010 U.S. Dist. LEXIS 81649, p. 9 (*Johnston*).) The party seeking attorney fees must show that the claim fell within the scope of the contract provision allowing attorney fees. (*Baldain v. Am. Home Mortg. Servicing, Inc.*, 2010 U.S. Dist. LEXIS 82876, pp. 5-6; *Johnston,* at pp. 9-10)

9

RECOVERY OF ATTORNEY FEES UNDER THE SENIOR TD

Wells Fargo asserts that section 9 of the Senior TD allows Wells Fargo, as successor to the originating lender, to recover its attorney fees incurred in protecting its interest in the property and enforcing its rights under the Senior TD. We disagree.

Section 9 of the Senior TD provides for an award of attorney fees but not under the circumstances in the instant case. Section 9 states in relevant part: "**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in . . . forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, . . . but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, . . ."

Section 9 of the Senior TD further states that, "Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of

disbursement and shall be payable with such interest, upon notice from Lender to Borrower requesting payment."

Tyler argues that, although the Senior TD attorney fees provision allows for recovery of attorney fees incurred in protecting Wells Fargo's interests, the fees are recoverable only during the life of the Senior TD, because the fees are added as debt secured by the Senior TD. After the deed of trust is paid off and extinguished, Wells Fargo can no longer recover attorney fees.

Wells Fargo cites a string of cases in support of the proposition Wells Fargo can recover its attorney fees under the Senior TD attorney fees provision. Those cases include *Smith v. Home Loan Funding, Inc.* (2011) 192 Cal.App.4th 1331, *Jones v. Union Bank of California* (2005) 127 Cal.App.4th 542, *Wutzke v. Bill Reid Painting Service, Inc.* (1984) 151 Cal.App.3d 36, as well as federal cases, *Hamilton v. Willms* (E.D. Cal., 2006) 2006 U.S. Dist. LEXIS 41115 (*Hamilton*), *Boza v. US Bank NA* (9th Cir. Cal. 2015) 606 Fed.Appx. 357, *Zimmerman v. Aurora Loan Services* (N.D. Cal. 2009) 2009 U.S. Dist. LEXIS 1609 (*Zimmerman*), *Schroeter v. Wells Fargo Bank N.A.* (S.D. Cal. 2013) 2013 U.S. Dist. LEXIS 87142, and *Johnston, supra,* 2010 U.S. Dist. LEXIS 81649.

Wells Fargo argues that in these cases the court granted the prevailing party's motion for attorney fees under an attorney fees provision similar, if not identical, to the attorney fees provision in the Senior TD in the instant case. In some of the cases, attorney fees were granted post-foreclosure, which Wells Fargo argues is analogous to

11

the instant case in which attorney fees were incurred after the Senior TD was paid off and ceased to exist. Wells Fargo's reliance on the cited cases is misplaced.

With the exception of *Hamilton, supra,* 2006 U.S. Dist. LEXIS 41115 and *Zimmerman, supra,* 2009 U.S. Dist. LEXIS 1609, none of the attorney fees clauses in the cases cited by Wells Fargo include language similar to the attorney fees provision in the Senior TD in the instant case, requiring that attorney fees incurred "by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument." In addition, none of the cases cited by Wells Fargo involve a wrongful foreclosure action arising from foreclosure on a junior deed of trust, with the senior deed of trust paid off, and the trustee of the senior deed of trust seeking recovery of its attorney fees under the extinguished senior deed of trust.

In *Hamilton, supra,* 2006 U.S. Dist. LEXIS 41115, a foreclosure lawsuit, defendants Redwood Trust Deed Service (Redwood Trust) and Susan Willms Thurston (Thurston), beneficiary of the Westamerica Bank Deed of Trust (Westamerica TD), brought motions for attorney fees based on attorney fee provisions in deeds of trust. The federal district court in *Hamilton* granted Redwood Trust's request for attorney fees and denied Thurston's attorney fees request. (*Id.* at p. 32.)

The *Hamilton* court noted that the attorney fee provision in the Redwood Trust deed of trust (Redwood TD) was a standard one. It applied to the defendant's "appearance in 'any action or proceeding purporting to affect the security.'" (*Hamilton, supra,* 2006 U.S. Dist. LEXIS 41115 at p. 11.) There is no indication that the Redwood

12

TD, attorney fee provision required that any amounts disbursed by the lender under the attorney fee provision must be added as debt secured by the Redwood TD.

Unlike the Redwood TD, the Westamerica TD was paid off before the inception of the action and the litigation did not involve foreclosure on the Westamerica TD. (*Hamilton, supra,* 2006 U.S. Dist. LEXIS 41115 at p. 18.)  The *Hamilton* court concluded the Westamerica TD, attorney fee provision was narrower than the Redwood TD, attorney fee provision.  The court in *Hamilton* denied attorney fees on the Westamerica TD because, as in the instant case, the defendants foreclosed on an entirely different deed of trust than the Westamerica TD.  The plaintiffs alleged they were induced to pay off the Westamerica TD without being told the trust deed had previously been assigned to another party.  After the plaintiffs paid off the Westamerica debt, the defendants foreclosed on the plaintiffs' property based on an entirely different promissory note and deed of trust than the Westamerica TD.  The complaint sought to set aside the foreclosure sale and return the property to the plaintiffs.  (*Id.* at pp. 19-20.)

The *Hamilton* court explained Thurston's motion for attorney fees was denied because "no Defendant is being sued because of their ownership of the Westamerica Deed of Trust or any duties owed under this document."  (*Hamilton, supra,* 2006 U.S. Dist. LEXIS 41115 at p. 20.)  The *Hamilton* court concluded the defendants were not required to litigate the action for the protection of their interest or the enforcement of their rights given under the Westamerica TD.  (*Ibid.*)  The defendants were not being

13

sued because of their ownership of the Westamerica TD or any duties owed under the deed. Therefore attorney fees were not available. (*Ibid.*)

Also, unlike the Redwood TD, the Westamerica TD contained a provision requiring recovery of attorney fees as added debt. The Westamerica TD attorney fees provision stated that "all reasonable expenses incurred by Lender which in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights *shall become a part of the indebtedness* payable on demand." (*Hamilton, supra,* 2006 U.S. Dist. LEXIS 41115 at p. 18; italics added.)

Similarly, in *Zimmerman, supra,* 2009 U.S. Dist. LEXIS 1609, the trust deed included language that the attorney fees "shall become additional debt of Borrower" but, unlike the instant case, there is no indication the attorney fee provision further required that such debt be secured by the security instrument, as is required in the instant case. (*Id.* at p. 2.) Furthermore, the federal district court in *Zimmerman* did not address the argument raised in the instant case that the language requiring the attorney fees added as debt, precluded recovery of attorney fees by motion in litigation. Because the lender's motion for attorney fees in *Zimmerman* was unopposed and this argument was not raised, the court did not address or consider it when granting the motion for attorney fees. "A decision is authority only for the point actually passed on by the court and directly involved in the case." (*Gomes v. County of Mendocino* (1995) 37 Cal.App.4th 977, 985.)

*Valencia v. Carrington Mortg. Servs., LLC* (U.S. Dist. Ct., Dist. of Hawaii, 2013) 2013 U.S. Dist. LEXIS 88886 (*Valencia*), cited by Tyler, supports the proposition Wells

Fargo cannot prevail on its motion for attorney fees because Wells Fargo's attorney fees must be added as debt secured by the security instrument. The court in *Valencia* denied a motion for attorney fees brought by defendants Carrington Mortgage Services, LLC and Deutsche Bank National Trust Company (Bank defendants), after the court dismissed the plaintiffs' complaint against Bank defendants. The deed of trust, attorney fee provision in *Valencia* contained language essentially identical to that contained in the Senior TD in the instant case.

In denying the motion for attorney fees, the court in *Valencia* noted that attorney fees may be awarded pursuant to an agreement between the parties. But if the nature of the claim is outside the terms of the attorney fee provision, attorney fees are not recoverable. (*Valencia, supra,* 2013 U.S. Dist. LEXIS 88886 at p. 25.) The deed of trust, attorney fee provision in *Valencia* stated:

> "[']If . . . there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument . . . Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including . . . paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument . . . .'

> ". . . .

> "'Any amounts disbursed by Lender under this Section 9 *shall become additional debt of Borrower secured by this Security Instrument*. These amounts shall bear

interest at the Note rate from the date of the disbursement and shall be payable, with such interest, upon notice from Lender or Borrower requesting payment.[']" (*Valencia, supra,* 2013 U.S. Dist. LEXIS 88886 at p. 26; italics added.)

In *Valencia*, the Bank defendants argued this attorney fee provision was broad enough to encompass all of the plaintiffs' claims in the action. (*Valencia, supra,* 2013 U.S. Dist. LEXIS 88886 at p. 27.) The plaintiffs' primary claims were that the Bank defendants violated statutory duties and lacked authority to foreclose because they had no relationship to the promissory note or mortgage. (*Id.* at p. 7.) The court in *Valencia* agreed that the deed of trust, attorney fee provision was broad enough to encompass all of the plaintiffs' claims in the foreclosure action, because it provided for attorney fees in any "'legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument.'" (*Id.* at p. 27.)

The *Valencia* court explained that, had the plaintiffs prevailed, they would have significantly affected the Bank defendants' interest in the property and/or rights under the mortgage. In the plaintiffs' complaint, the plaintiffs "sought to enjoin foreclosure and strip the Bank Defendants of their right to enforce the note and mortgage by having the note, mortgage, assignment of note and mortgage, and all foreclosure notices rescinded and expunged from the Bureau of Conveyances. Clearly, such remedies would significantly affect the Bank Defendants' interest in the Property and rights under the mortgage." (*Valencia, supra,* 2013 U.S. Dist. LEXIS 88886 at pp. 27-28.)

16

Nevertheless, the *Valencia* court denied the Bank defendants' motion for attorney fees because "the mortgage states that any amounts disbursed in protecting the Bank Defendants' rights under the mortgage, including for attorneys' fees, 'shall become additional debt of Borrower secured by this Security Instrument . . . and shall be payable, with such interest, upon notice from Lender or Borrower requesting payment.' [Citation.]  As such, the mortgage does not entitle the Bank Defendants to recover attorneys' fees as an award pursuant to the instant litigation.  Rather, as provided in the mortgage, the Bank Defendants may convert the amounts spent on attorney' fees into additional debt secured by the mortgage." (*Valencia, supra,* 2013 U.S. Dist. LEXIS 88886 at p. 28.)  The *Valencia* court added that, "[a]s such, the Court finds that the attorneys' fee provision in the mortgage does not provide an independent basis for an award of attorneys' fees in the instant litigation." (*Id.* at pp. 28-29.)

We recognize *Valencia* is not binding precedent here, since we are not bound by decisions of the federal courts, except for those of the United States Supreme Court. (*People v. $8,921 United States Currency* (1994) 28 Cal.App.4th 1226, 1232, fn. 6.) *Valencia, supra,* 2013 U.S. Dist. LEXIS 88886 serves as persuasive but not controlling authority. (*People v. Bradley* (1969) 1 Cal.3d 80, 86.)  In addition, *Valencia* differs factually in that the instant case involves foreclosure on a junior deed of trust after the Senior TD was paid off and extinguished.  Wells Fargo therefore, not only cannot recover attorney fees by motion, but also cannot convert the amounts spent on attorney fees into additional debt secured by the mortgage because the Senior TD has been extinguished.

17

We nevertheless conclude, as in *Valencia*, that the Senior TD attorney fee provision does not provide an independent basis for awarding attorney fees. Therefore the trial court did not err in denying Wells Fargo's motion for attorney fees. The instant action concerns foreclosure of the Junior TD, with the Senior TD already paid off and extinguished, and the attorney fees provision in the Senior TD states that any attorney fees recoverable under the Senior TD "shall become additional debt of Borrower secured by this Security Instrument." As such, the Senior TD attorney fees provision does not entitle Wells Fargo to recover attorneys' fees as an award pursuant to the instant litigation. (*Valencia, supra,* 2013 U.S. Dist. LEXIS 88886 at pp. 28-29.)

VI

DISPOSITION

The judgment is affirmed. Tyler is awarded his costs on appeal.

NOT TO BE PUBLISHED

CODRINGTON

J.

We concur:

MILLER

       Acting P. J.

SLOUGH

       J.

18