Filed 4/19/22  Johansen v. Bayview Loan Servicing LLC CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| CARLA L. JOHANSEN, | C089085 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2018-00247038-CU-OR-GDS) |
| v. | |
| BAYVIEW LOAN SERVICING LLC, | |
| Defendant and Respondent. | |

Under Code of Civil Procedure section 529,[1] a court generally must require a party who has obtained a preliminary injunction to post an undertaking in an amount determined by the court.  Courts set this amount based on their estimate of the harmful effect the injunction is likely to have on the enjoined party, and in the event they later conclude the injunction was wrongly issued, they may require some or all of this amount

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

1

to be distributed to the enjoined party to compensate it for the harm it suffered. These requirements provide a measure of protection to parties who are mistakenly enjoined.

In this case, Carla L. Johansen sought to enjoin her loan servicer, Bayview Loan Servicing LLC (Bayview), from foreclosing on her home. The trial court afterward agreed to grant a preliminary injunction. But, relying on section 529, it conditioned the grant of the injunction on her posting an undertaking in an amount that would, among other things, cover the attorney fees that Bayview would likely incur as a result of the injunction. On appeal, Johansen contends the trial court wrongly included these attorney fees when it determined the amount of the undertaking. We affirm the court's order.

BACKGROUND

In 2005, Johansen took out a loan for $260,000 and signed a deed of trust on her home to secure the loan. Sometime later, after Johansen fell behind on her loan payments, she and her loan servicer agreed to a loan modification. Sometime later still, after she again fell behind on her loan payments, she sought a second loan modification from her loan servicer. But she never obtained the loan modification that she believed was appropriate.

In 2018, Johansen sued Bayview, which was her loan servicer at the time, and several other entities. Among other things, she alleged that Bayview threatened to foreclose on her home unless she signed a loan modification agreement that artificially inflated the amount of her loan and that Bayview, in violation of Civil Code section 2923.7, "failed to assign to [her] a designated [single point of contact] to assist her through the loan modification process." (See Civ. Code, § 2923.7, subd. (a) ["When a borrower requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact."].)

Two weeks after she filed her complaint, Johansen filed an application for a temporary restraining order and an order to show cause why a preliminary injunction

2

should not be issued.  Johansen sought in her filing to restrain and enjoin Bayview and the other defendants from foreclosing on her home.

The trial court later agreed that a preliminary injunction was appropriate, finding that Bayview likely violated Civil Code section 2923.7 and "that the balance of hardships weighs heavily in favor of injunctive relief."  But, over Johansen's objection, the court conditioned the grant of the injunction on her posting an undertaking under section 529. The court initially set the undertaking in the amount of $39,000 based on Bayview's representation that it would incur around $30,000 in attorney fees and would lose around $9,000 in mortgage payments if the injunction were granted.  But following oral argument, the court reduced the undertaking amount to $20,000.

Johansen timely appealed.

## DISCUSSION

Sections 525 through 533 provide the primary statutory authority for injunctions pending trial.  (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2015) ¶ 9:501, p. 9(II)-2.)  Under section 529, a court, on granting an injunction, "must require an undertaking on the part of the applicant to the effect that the applicant will pay to the party enjoined any damages, not exceeding an amount to be specified, the party may sustain by reason of the injunction, if the court finally decides that the applicant was not entitled to the injunction."  (§ 529, subd. (a).)  "This rule serves to afford compensation to parties who are ultimately found to have been wrongly enjoined."  (*Stevenson v. City of Sacramento* (2020) 55 Cal.App.5th 545, 551 (*Stevenson*).)

Considering the statute's use of the word "must," compliance with section 529's requirements is typically a necessary condition to obtain a preliminary injunction. (*Stevenson, supra*, 55 Cal.App.5th at p. 551; see also *Biasca v. Superior Court of California* (1924) 194 Cal. 366, 367 [an undertaking under section 529 is "definitely" required in connection with a preliminary injunction]; *Paiva v. Nichols* (2008)

3

168 Cal.App.4th 1007, 1024 [absent an exception, "the filing of an undertaking in connection with the issuance of a preliminary injunction is required by statute"].) Several statutes, however, expressly exempt certain parties from section 529's undertaking requirement (see, e.g., § 529, subd. (b)(3) [exempting public entities]), and another statute grants courts discretion to exempt indigent parties from this requirement (§ 995.240).

In this case, Johansen challenges the amount of the injunction bond.[2] As other courts have explained, "[t]he amount of the bond is fixed by the judge, exercising sound discretion, based on the probable damage that the enjoined party may sustain because of the injunction." (*Greenly v. Cooper* (1978) 77 Cal.App.3d 382, 390.) Attempting to fulfill this requirement, the court here concluded that the bond amount should cover, among other things, the attorney fees that Bayview would likely incur as a result of the injunction. But in Johansen's view, the court should have excluded these fees from the bond amount. She bases her argument largely on section 9 of the deed of trust securing her loan. In relevant part, that section states: "If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, [or] (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument . . ., then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument. . . . Lender's actions can include, but are not limited to[] . . . paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this

---

[2] We use the words "undertaking" and "bond" interchangeably. "Under the Bond and Undertaking Law (CCP §§ 995.010-996.560), there is no significant legal distinction between a bond and an undertaking. . . . Technically, a distinction between bonds and undertakings still exists, although it has little legal significance: A bond is executed by both principal and sureties (CCP § 995.140(a)), while an undertaking is executed by the sureties alone (CCP §§ 995.140(b), 995.190)." (Cal. Real Prop. Remedies and Damages (Cont. Ed. Bar 2020) § 13.100.)

4

Security Instrument. . . . [¶] Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument."

According to Johansen, this provision shows that Bayview's sole recourse, if it turns out that it was wrongly enjoined, is to add the attorney fees it incurred to remove the injunction to the loan debt, not to attempt to recover these fees on the injunction bond. She reasons that this conclusion follows from *Chacker v. JPMorgan Chase Bank, N.A.* (2018) 27 Cal.App.5th 351, 358 (*Chacker*). The court there considered an identical provision in a deed of trust, though under different circumstances. It considered, in particular, whether this provision served as a fee-shifting clause within the meaning of Civil Code section 1717—a statute that allows a court to award attorney fees to the prevailing party in an action on a contract "where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded." The court found it did not. The deed of trust, the court concluded, "authorizes attorney fees to be added to the loan amount; [it] does not provide for a separate award of attorney fees" and so does not trigger Civil Code section 1717. (*Chacker*, *supra*, 27 Cal.App.5th at p. 357; see also *Hart v. Clear Recon Corp.* (2018) 27 Cal.App.5th 322, 327 [finding the same].)

Attempting to mirror this reasoning, Johansen argues that the deed of trust in this case authorizes attorney fees to be added to the loan amount; it does not provide "for payment through recovery on a Bond." In raising this argument, Johansen appears to suppose that section 529 functions similarly to Civil Code section 1717 and applies only when the relevant agreement triggers the statute. To the extent that Johansen holds this belief, however, she is wrong. Section 529, unlike Civil Code section 1717, operates even when the parties' agreement is silent and even when the parties have no agreement at all. So even if it is true that the deed of trust here did not itself require Johansen to post a bond, as Johansen argues, it still remains true that section 529 *did* require Johansen to post a bond. (§ 529, subd. (a) [a trial court, on granting an injunction, "must require an

5

undertaking"].)  Nothing in the *Chacker* decision suggests any differently.  To the extent, then, that some authority favors a limitation on the amount of the bond in this case, that authority is not *Chacker*.

Johansen next asserts that section 726, often called the "one form of action" rule, also supports her position.  "Under section 726, 'there is only "one form of action" for the recovery of any debt or the enforcement of any right secured by a mortgage or deed of trust'; '[t]hat action is foreclosure, which may be either judicial or nonjudicial.' [Citation.]"  (*Black Sky Capital, LLC v. Cobb* (2019) 7 Cal.5th 156, 160.)  According to Johansen, should the preliminary injunction in this case be lifted, Bayview will recover the attorney fees that it added to her debt "through the sale proceeds" following a foreclosure sale, and it will then seek to recover these fees again "through a second action on the Injunction Bond."  She then asserts:  "Allowing a mortgage servicer to get paid attorney fees both through nonjudicial foreclosure AND an action on the Injunction Bond would be two actions to collect fees and therefore would violate" the "one form of action" rule.

We agree that, had Bayview already recovered its attorney fees through a foreclosure sale, it could not then recover these same fees again through an action on the injunction bond.  If nothing else, that result would violate the rule against double recovery.  (*Tavaglione v. Billings* (1993) 4 Cal.4th 1150, 1158 ["Double or duplicative recovery for the same items of damage amounts to overcompensation and is therefore prohibited."]; *Melnyk v. Robledo* (1976) 64 Cal.App.3d 618, 625-626 ["Defendant cannot use the injunction bond to obtain a double recovery of attorney fees already awarded and paid."].)  But those are not the facts of our case.  Because Johansen's argument is premised on anticipated future events that may or may not occur—namely, Bayview's adding its attorney fees to her debt, recovering these fees through a foreclosure sale, and then seeking to recover these fees again through an action on the injunction bond—we find her argument unripe for review at this time.

Johansen also suggests a third argument for reversal in her introduction, which she titled "Statement of the Nature of the Action." She suggests there that defendants who anticipate incurring attorney fees as a result of an injunction cannot seek to safeguard their ability to recover these fees through an injunction bond if they can potentially recover these fees through some alternative means. But we find nothing in the text of section 529 that imposes this limitation. Section 529 states that a court "must require an undertaking" covering "any damages, not exceeding an amount to be specified, the [enjoined] party may sustain by reason of the injunction"—not that a court "must require an undertaking," except when the enjoined party *might* be able to recover its damages through some other means. In any event, because Johansen offers this argument only in her introduction, and not "under a separate heading or subheading summarizing the point," we find this argument forfeited. (*Cox v. Griffin* (2019) 34 Cal.App.5th 440, 453-454 [declining to consider an argument that was raised only in the appellant's introduction].)

Finally, in her reply brief, Johansen argues that the trial court should have waived the requirement of an injunction bond because she is indigent. Courts, it is true, can exempt indigent parties from section 529's bond requirement. (§ 995.240.) But because Johansen raises this argument for the first time in her reply brief, without good cause, we find the argument forfeited. (*Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8.)

DISPOSITION

The order granting a preliminary injunction and setting the amount of the bond is affirmed.  Bayview is entitled to recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)

_____\\s\\_____,
BLEASE, Acting P. J.


We concur:


_____\\s\\_____,
HULL, J.


_____\\s\\_____,
ROBIE, J.

8